1

**KRONENBERGER ROSENFELD, LLP**

2

Karl S. Kronenberger (CA Bar No. 226112)
Jeffrey M. Rosenfeld (CA Bar No. 222187)

3

Virginia A. Sanderson (CA Bar No. 240241)
150 Post Street, Suite 520

4

San Francisco, CA 94108
Telephone: (415) 955-1155

5

Facsimile: (415) 955-1158
karl@KRInternetLaw.com

6

jeff@KRInternetLaw.com

7

ginny@KRInternetLaw.com

8

Attorneys for Plaintiffs
AMBER KRISTI MARSH AND STACIE EVANS

9

10

**UNITED STATES DISTRICT COURT**

11

**DISTRICT OF ARIZONA**

12

**AMBER KRISTI MARSH** and

13

**STACIE EVANS**, individually and on
behalf of a class of similarly situated

14

persons,

15

Plaintiffs,

16

vs.

17

**MOE TASSOUDJI**, an individual, and

18

**BILL CUEVAS**, an individual, and **DOES
1-10**, inclusive,

19

20

Defendants.

21

22

23

24

25

26

27

28

| CLASS ACTION |
| --- |

Case No.

**CLASS ACTION COMPLAINT FOR:**
- **VIOLATION OF BUS. & PROF. C. §17200;**
- **VIOLATION OF ARIZ. REV. STAT. §§44-1521 *et seq.*;**
- **CONVERSION AND AIDING AND ABETTING CONVERSION;**
- **NEGLIGENCE**

**DEMAND FOR JURY TRIAL**

Case No.                                                                 **COMPLAINT**

1    Plaintiffs Amber Kristi Marsh and Stacie Evans bring this action individually and on

2    behalf of a class of similarly situated persons, by and through their undersigned counsel,

3    and allege as follows:

4                                    **INTRODUCTION**

5        1.    This complaint addresses Defendants' theft of money from those who need

6    it the most.   Defendants Moe Tassoudji and Bill Cuevas (collectively "Defendants"),

7    through various companies they own and operate, ran a scam where they lured people

8    into applying for payday loans on Internet websites.   Defendants' companies took the

9    information they gathered from the payday loan applications—including the applicants'

10   banking information—and used this information to forge checks on behalf of the

11   applicants.   These checks were fakes; they were created without the applicants'

12   knowledge or consent.   These checks supposedly paid for Defendants' online coupon

13   services, though no applicant ever agreed to buy such services.   In fact, the idea that a

14   cash-strapped, payday loan applicant would spend money on a coupon service, the

15   purpose of which is to encourage the person to spend additional money, is absurd.   The

16   money was transferred from the applicants' checking accounts to Defendants' companies,

17   and ultimately to Defendants, all before the applicants realized that the forged checks had

18   been drawn or that withdrawals have been made.   Defendants performed this scam over

19   a million times, and robbed people in a frail financial condition of their remaining money.[1]

20       2.    Plaintiffs Stacie Evans and Amber Kristi Marsh separately applied for payday

21   loans on different payday loan websites in November 2010 and January 2011, respectively.

22       3.    As part of the online application process, each Plaintiff entered her personal

23   information into the payday loan website, including her checking account number and

24   bank routing number.

25   _____

26   [1] A lawsuit against Defendants' companies is currently pending in the United States
     District Court for the Northern District of California, *Marsh et al. v. Zaazoom Solutions,*
27   *LLC, et al.*, Case No., C-11-05226-YGR (N.D. Cal.).   Defendants were named as
     defendants in this California action.   However, on March 20, 2012 the Honorable Yvonne
28   Gonzalez Rogers dismissed Defendants from the California action for lack of personal
     jurisdiction.

CASE NO.                                                                    **COMPLAINT**

1      4.     During the application process, both Plaintiffs specifically avoided

2  registering for any third party offers that were advertised on the payday loan websites.

3      5.     On information and belief, these payday loan websites were operated by

4  the affiliates of Defendants, with whom Defendants had contracted to gather and transmit

5  the applicants' personal information.

6      6.     Without Plaintiffs' knowledge or consent, Defendants obtained Plaintiffs'

7  personal information from these payday loan websites.

8      7.     Without Plaintiffs' knowledge or consent, Defendants used Plaintiffs'

9  personal information to register Plaintiffs for Defendants' online coupon services.

10     8.     However, Plaintiffs had never heard of Defendants' coupon services, let

11  alone registered for these services.

12     9.     Defendants then drafted remotely created checks from Plaintiffs' checking

13  accounts, making them payable to Defendants' companies for Defendants' coupon

14  services.  Plaintiffs never authorized Defendants to draft these checks.

15     10.    Defendants deposited the checks in Defendants' bank accounts.

16     11.    As a result of Defendants' misconduct, Plaintiffs and those similarly situated

17  to Plaintiffs have been damaged.

18     12.    On information and belief, Defendants have engaged in this same

19  misconduct with respect to over a million other individuals who are similarly situated to

20  Plaintiffs, where: a) these individuals applied for a loan on a payday loan website where

21  they entered their checking account information, b) these individuals never authorized

22  Defendants to draft remotely created checks from their checking accounts, and c)

23  Defendants used the individuals' personal information to draft and deposit remotely

24  created checks without the individuals' authorization.

25                           **JURISDICTION AND VENUE**

26     13.    This Court has subject matter jurisdiction over this matter under 28 U.S.C.

27  §1332(d) because the matter in controversy exceeds the sum or value of $5,000,000

28  exclusive of interest and costs, and this matter is a class action in which a member of the

CASE NO.
                                    2
                                                                    **COMPLAINT**

1   class of Plaintiffs is a citizen of a different State from one or more of Defendants.  The

2   exceptions to jurisdiction set forth in 28 U.S.C. §1332(d)(4) do not apply because greater

3   than two thirds of the members of all proposed Plaintiff classes in the aggregate are not

4   citizens of Arizona.

5          14.     This Court has personal jurisdiction over Defendants because Defendants

6   reside in Arizona.

7          15.     This Court is a proper venue under 28 U.S.C. §1391 because this Court is

8   in a judicial district in which a substantial part of the events or omissions giving rise to the

9   claims occurred and because all Defendants reside in this district.

10                                          **PARTIES**

11         16.     On information and belief, Defendant Moe Tassoudji is an individual

12   residing in Scottsdale, Arizona.

13         17.     On information and belief, Defendant Bill Cuevas is an individual residing in

14   Scottsdale, Arizona.

15         18.     Plaintiff Amber Kristi Marsh is an individual residing in Palm Desert,

16   California.

17         19.     Plaintiff Stacie Evans is an individual residing in Palmdale, California.

18         20.     Plaintiffs are uncertain of the true names and capacities of those

19   defendants sued by the fictitious names DOES 1 through 10, who also are responsible

20   and liable for the injuries alleged in this complaint and who proximately caused damages

21   to Plaintiff and the members of the Class.  Plaintiffs will amend this complaint to add the

22   true names and capacities of the DOES when they become known.

23         21.     Upon information and belief, at all times all Defendants were the partners

24   and/or co-conspirators of each other, and each acted within the course, scope, and

25   authority of such relationships so that, as a result, all Defendants are jointly and severally

26   liable for the acts alleged herein.

27   //

28   //

**FACTUAL ALLEGATIONS**

**Remotely Created Checks**

22.    A remotely created check is a check that is not created by the paying bank and that does not bear the signature of the payor.  Rather, a remotely created check is a check that: a) is created by the payee, b) is drawn on the payor's bank account, and c) does not bear the signature of the payor in the format agreed to between the paying bank and payor.

23.    A remotely created check is typically created when the holder of a checking account (the payor) authorizes a payee to draft a check on the payor's account, but where the payor does not actually sign the check.

24.    In place of the signature of the payor, a remotely created check typically bears the customer's printed or typed name or bears a statement that the payor has authorized the check.

25.    Thus, with the payor's authorization, the payee may create a remotely created check payable to itself.  Instead of obtaining the payor's actual signature on the check, the payee inserts the statement that the payor has authorized the remotely created check.  The payee then deposits the remotely created check in the payee's bank account.

26.    After evaluating the authenticity of the check, the payee's bank sends the remotely created check to the payor's bank for settlement.  If the payor's bank accepts the check, it will provide the funds identified in the check to the payee's bank.  The payee's bank, in turn, will deposit those funds in the payee's account.  All of these steps may occur before the payor sees the remotely created check or even knows that a withdrawal has been made from his or her bank account.

27.    Remotely created checks are particularly vulnerable to fraud for numerous reasons, including that fact that:

   a. They do not bear the payor's signature or other readily verifiable indication of authorization;

   b. The funds can be withdrawn from the payor's account before the payor

1    knows that the remotely created check was generated;

2      c.  Remotely created checks are easy to create, requiring only a computer and
3          printer; and

4      d.  The payee does not need special access to the banking system, as is the
5          case with ACH transactions.

6    28.    The risk of fraud associated with remotely created checks has been
7  recognized for over 15 years.   In prepared testimony before the House Banking
8  Committee on April 15, 1996, the Director of the Bureau of Consumer Protection of the
9  Federal Trade Commission ("FTC") warned that remotely created checks are "the favorite
10  method of fraudulent actors for taking consumers' money through fraudulent
11  telemarketing and other scams."    *See* "Demand Draft Fraud", available at
12  http://www.ftc.gov/speeches/other/ddraft.shtm.

13    29.    That same year, California was one of the first States to "establish rules
14  governing 'demand drafts' and to specify liability for unauthorized demand drafts."  *See*
15  SB 1742 (1995-1996 Leg. Sess.).  The legislative history of SB 1742 noted the growing
16  "use of demand drafts by telemarketing fraud operators," and the legislation modified the
17  Commercial Code to shift the risk of loss from unauthorized demand drafts from the
18  payor bank to the depositary bank.  The rationale for this risk-shifting was that "[t]he
19  depository bank, which is charged with knowing its customer, is in the best position to
20  avoid the introduction into the check collection system of an unauthorized demand draft
21  by scrutinizing the customers allowed to deposit those drafts."

22    30.    In 2004, the Canadian Payments Association banned the use of remotely
23  created checks in the Canadian banking system due to the high risk of fraud that they pose.
24  *See* CPA Policy Statement, "Prohibition of Tele-cheques in the Clearing & Settlement
25  System," June 1, 2003, available at http://www.cdnpay.ca/imis15/eng/res/pr/tele.aspx.

26    31.    In March of 2005, the Federal Reserve acknowledged that "remotely
27  created checks are vulnerable to fraud because they do not bear a signature or other
28  readily verifiable indication of authorization," that "there have been significant consumer

CASE NO.
                                        5                          COMPLAINT

1   and bank complaints identifying cases of alleged fraud using remotely created checks,"

2   and submitted a request for comments on proposed regulations governing the use of

3   these checks. *See* March 1, 2005 Federal Reserve Release and attached Federal

4   Register                notice,                   available                    at

5   http://www.federalreserve.gov/boarddocs/press/bcreg/2005/200503012/attachment.pdf.

6         32.     In response to the Federal Reserve's request for comment, the Attorneys

7   General of thirty-five states (including California) and the District of Columbia stated their

8   "position that demand drafts are frequently used to perpetrate fraud on consumers" and

9   "that such drafts should be eliminated in favor of electronic funds transfers that can serve

10   the same payment function." *See* May 9, 2005 Letter from National Association of

11   Attorneys General to the Board of Governors of the Federal Reserve System, available at

12   http://www.federalreserve.gov/SECRS/2005/May/20050512/R-1226/R-1226_264_1.pdf.

13         33.     Based on these findings, the FTC, the banking community, and lawmakers

14   have recognized that with remotely created checks, the burden of ensuring that the

15   check is authorized is properly placed on the bank whose customer deposited the check.

16   This is true because this bank—*i.e.* the depositary bank—is in the best position to detect

17   fraud, and this burden provides an economic incentive for the depositary bank to monitor

18   customers that deposit remotely created checks, and thus, to limit the number of

19   fraudulent remotely created checks that are introduced into the check collection system.

20   Thus, the depositary bank has a duty to examine a remotely created check for

21   authenticity before sending the check to the paying bank for settlement.

22         34.     Despite regulations on the use of remotely created checks, scam artists

23   have continued to find them to be an invaluable tool in perpetrating their fraud. *See, e.g.*,

24   "Bilking the Elderly, With a Corporate Assist" The New York Times, Charles Duhigg, May

25   20, 2007, available at http://www.nytimes.com/2007/05/20/business/20tele.html?_r=1.

26                                        **Check Return Rates**

27         35.     If a remotely created check is not honored by the paying bank, the check is

28   deemed "returned."

1
2
3
4

36.     A remotely created check may be returned for a variety of reasons, including where the drawer account does not exist or is closed, where the drawer account has insufficient funds to settle the check, or where the check is a forgery or otherwise fraudulent.

5
6

37.     For the past several years, the Federal Reserve has reported that the average total return rate for checks is about 0.5%

7
8

38.     According to the FTC, "[a] red flag indicating unlawful debiting is a high rate of consumers and their banks rejecting and returning transactions submitted for debiting."

9
10
11

39.     The FTC has also found that excessive return rates provide "<u>obvious signs</u>" that the merchants, processors, and banks are engaged in dubious practices.  (emphasis added).

12

**The Zaazoom Entities**

13
14

40.     Defendants are principals, officers, and owners of several companies that were used to perpetrate the misconduct described in this complaint.

15
16

41.     On information and belief, Zaazoom Solutions, LLC ("Zaazoom") is a Delaware limited liability company with its principal office in Scottsdale, Arizona.

17
18

42.     On information and belief, Zaza Pay LLC ("Zaza Pay") is a Delaware limited liability company with its principal office in Scottsdale, Arizona.

19
20

43.     On information and belief, Zaazoom is the sole member and principal of Zaza Pay.

21
22
23

44.     On information and belief, Zaza Pay operates under the fictitious business names Discount Web Member Sites, LLC; Unlimited Local Savings, LLC; Web Discount Club; Web Credit Rpt. Co.; MegaOnlineClub, LLC; and RaiseMoneyForAnything.

24
25

45.     On information and belief, MultiECom, LLC ("MultiECom") is a Colorado limited liability company with its principal office in Scottsdale, Arizona.

26
27

46.     On information and belief, Zaza Pay is the sole member and principal of MultiECom.

28

CASE NO.

**COMPLAINT**

47.     On information and belief, MultiECom operates under the fictitious business names Online Discount Membership, Web Discount Company, and Liberty Discount Club.

48.     On information and belief, Online Resource Center, LLC ("ORC") is a Delaware Limited Liability Company with its principal office in Scottsdale, Arizona.

49.     On information and belief, ZaZa Pay is the sole member and principal of ORC.

50.     On information and belief, ORC operates under the fictitious business names Web Coupon Site, USave Coupon, and UClip.

51.     In this complaint, Zaazoom, Zaza Pay, MultiECom, and ORC are referred to as the "Zaazoom Entities."

**The Zaazoom Entities Misappropriated Personal Information and Drafted Fraudulent Remotely Created Checks Using that Information**

52.     The Zaazoom Entities provide online coupon services though various Internet websites, including but not limited to <libertydiscountclub.com>, <777discountclub.com>, <247discountclub.com>, <grocerysavingsdirect.com>, <couponsinyourmailbox.com>, <websavingsclub.com>, <savingclub247.com>, <discountclub247.com>, and <uclipusave.com> (collectively, the "Zaazoom Websites").

53.     Members of the Zaazoom Websites can download and/or print coupons from these websites, which can then be redeemed with various merchants.

54.     Theoretically, a person can sign up to become a member of one of the Zaazoom Websites by entering his or her name, address, email address, and phone number into the website's application screen.  Additionally, the person must enter his or her checking account number and bank routing number into the websites' application screen.[2]  Once registered, the Zaazoom Entities work with processors to draft remotely

---

[2]  Instead of checking account information, a user of one of the Zaazoom Websites can enter credit card information; however the default setting is for the user to enter his or her checking account information.

CASE NO.                                                                                          **COMPLAINT**

8

1   created checks from the member's checking account to pay for the Zaazoom Entities'

2   coupon services.

3        55.     Despite the foregoing process, the vast majority—if not all—members of the

4   Zaazoom Websites did not become members voluntarily.  Rather, the Zaazoom Entities

5   registered most people without their knowledge or consent.

6        56.     In particular, the Zaazoom Entities obtained information regarding

7   individuals ("Applicants") from various websites that allow individuals to apply for short-

8   term cash advances, all referred to as payday loans or paycheck loans (collectively, the

9   "Payday Loan Websites").[3]

10       57.     On information and belief, the Payday Loan Websites were created,

11  maintained, and operated by affiliates of the Zaazoom Entities.  These affiliates are third

12  parties with whom the Zaazoom Entities contracted to collect Applicants' personal

13  information through the operation of the Payday Loan Websites.

14       58.     When applying for a payday loan on a Payday Loan Website, an Applicant

15  was required to enter his or her personal information, including, name, address, email

16  address, and telephone number.  Additionally, an Applicant was required to enter his or

17  her checking account number and bank routing number.  The Payday Loan Websites

18  would not allow the Applicant to proceed with the application process unless a valid

19  checking account number and bank routing number were entered.   With varying

20  language, the Payday Loan Websites stated that the Applicant's checking account

21  information is necessary to fund the loan.

22       59.     Without the Applicants' knowledge or consent, the operators of the Payday

23  Loan Websites transferred the Applicants' personal information—including the

24  Applicants' checking account information—to the Zaazoom Entities.

25

26  _____

27  [3] A payday loan (also called a paycheck advance or payday advance) is a small, short-
    term loan intended to cover immediate expenses until the loan applicant's next paycheck
28  arrives, where payment and repayment are made directly to and from the recipient's
    checking account.

CASE NO.                              9                              **COMPLAINT**

60.     Without the Applicants' knowledge or consent, the Zaazoom Entities used the Applicants' personal information to register the Applicants for memberships with Zaazoom Website(s), such as <libertydiscountclub.com> (the "Liberty Website") and <uclipusave.com> (the "U-Clip Website").

61.     The Applicants never consented to registering for any membership with any one of the Zaazoom Websites.

62.     Without the Applicants' knowledge or consent, the Zaazoom Entities sent the Applicants' personal information to various payment processors.  The processors used the Applicant's personal information to draft remotely created checks from the Applicants' checking accounts payable to the Zaazoom Entities.  The processors then deposited those checks and sent the funds identified in those checks to the Zaazoom Entities.

63.     The return rate for the Zaazoom Entities' remotely created checks was extraordinarily high, exceeding 57%, or over 100 times the national average for returned checks.

64.     As a result of the Zaazoom Entities' misconduct, money was wrongfully withdrawn from the Applicants' bank accounts.

**Defendants' Integral Involvement with the Zaazoom Entities**

65.     On information and belief, Defendants are the Zaazoom Entities' sole principals and members.

66.     On information and belief, Defendants run the day-to-day operations of the Zaazoom Entities and also make all significant strategic decisions for these Defendants.

67.     On information and belief, Defendants were aware of and actively participated in all of the actions, activities, and events alleged herein.

68.     On information and belief, Defendants each owned 50% of Zaza Pay LLC, serving as its co-Presidents.

69.     On information and belief, Zaza Pay owned and operated all of the Zaazoom Websites.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

70.     On information and belief, Defendant Tassoudji was the sole owner of MultiECom and Defendant Cuevas was the sole owner of ORC.  Defendants used these companies to operate the Zaazoom Websites and to enroll Applicants in these websites.

71.     On information and belief, ultimately, Defendants transferred their interest in MultiECom and ORC to Zaza Pay, which they also owned and controlled.

72.     On information and belief, Defendant Tassoudji is a part owner of Zaazoom and currently serves as the Chief Operational Officer of Zaazoom.

73.     On information and belief, Defendant Cuevas currently serves as the Chief Technology Officer of Zaazoom.

74.     On information and belief, at a time relevant to this complaint, Zaazoom became the owner of Zaza Pay, and thus the owner of all of the Zaazoom Websites.

75.     On information and belief, at all relevant times, Defendants maintained their leadership positions with Zaazoom.

76.     On information and belief, in their roles as Chief Operational Officer and Chief Technology Officer, Defendants have overseen the design, development, and maintenance of the Zaazoom Websites and the use of Applicants' personal information to forge remotely created checks.

77.     On information and belief, Defendants were integrally involved in negotiating and monitoring the Zaazoom Entities' contacts with affiliates.  On information and belief, under these contracts the affiliates agreed to collect Applicants' personal information through Payday Loan Websites and transmit that personal information to the Zaazoom Entities.

78.     On information and belief, Defendants were integrally involved in the creation and depositing of remotely created checks payable to the Zaazoom Entities. Tassoudji was the person primarily responsible for negotiating contracts with payment processors.  Both Defendants were heavily involved in the day-to-day communications with the payment processors.  During these communications, Defendants discussed: a) the creation of the checks at issue in this lawsuit, b) the depositing of these checks and

CASE NO.

11

**COMPLAINT**

the transfer of money to the Zaazoom Entities, c) the reconciling of the checks with the payments received by the Zaazoom Entities, d) the transfer of checking and deposit information between the Zaazoom Entities and the processors, e) the creation of new accounts for the Zaazoom Websites, f) the returned checks and the reasons for the returns, g) the refunds issued to consumers, and h) the supposed consumer authorization for the forged checks.

79.　On information and belief, Defendants knew that Applicants had not enrolled in any Zaazoom Website.

80.　On information and belief, Defendants knew that Applicants had not agreed to pay for a membership in any Zaazoom Website.

81.　On information and belief, Defendants assisted in enrolling Applicants in Zaazoom Website(s) knowing that the Applicants had not agreed to be enrolled.

82.　On information and belief, Defendants assisted processors in drafting and depositing remotely created checks payable to the Zaazoom Entities from the Applicants while knowing that the Applicants had not authorized these checks.

83.　On information and belief, the Zaazoom Entities received a tremendous number of consumer complaints about their remotely created checks.

84.　On information and belief, the vast majority—if not all—of these complaining consumers stated that they had not enrolled in any Zaazoom Website and had not authorized the creation of remotely created checks from their accounts.

85.　On information and belief, Defendants oversaw the customer service for the Zaazoom Websites and Defendants were aware of the tremendous number of consumer complaints and the nature of these complaints.

86.　To wit, Defendants knew that a tremendous number of supposed customers of the Zaazoom Entities had complained that the remotely created checks drawn in their names were forgeries.

//

//

87.    Defendants were also aware that the check return rate for the remotely created checks payable to the Zaazoom Entities exceeded any acceptable return rate by more than 100 times.

88.    Defendants were aware that this excessive check return rate occurred even after a payment processor had filtered out more than 20% of the checks that the Zaazoom Entities had sought to deposit.

89.    On information and belief, Defendants were aware that banks, government entities, and consumer watchdogs had inquired as to the Zaazoom Entities' practices.

90.    On information and belief, Defendants were aware that the Zaazoom Entities' online coupon programs had "F" ratings with the Better Business Bureau, and that the Better Business Bureau had published comments such as, "[t]he company has failed to respond to the majority of complaints and has failed to correct the underlying cause of these complaints."

91.    Despite this knowledge, Defendants provided substantial assistance to the Zaazoom Entities in enrolling Applicants in the Zaazoom Websites and in drafting remotely created checks from the Applicants' accounts.

92.    As officers and principals of the Zaazoom Entities, Defendants obtained a direct financial benefit from their misconduct.

**Plaintiff Marsh**

93.    Plaintiff Marsh has never applied to be a member of the Liberty Website or the U-Clip Website or any other one of Defendants' websites.  Marsh never provided her checking account number or her bank routing number to either the Liberty Website or the U-Clip Website or any other one of Defendants' websites.

94.    On or around January 16, 2011, Marsh applied for a payday loan on a Payday Loan Website.

95.    In applying for a payday loan, the Payday Loan Website presented Marsh with online offers for unrelated goods and services.  However, Marsh specifically chose not to participate in any of those offers or to make any purchases.  Given Marsh's

1  financial situation, it was not possible for Marsh to consider participating in such offers,

2  and she automatically rejected all such offers.

3       96.    In order to apply for a payday loan, the Payday Loan Website required

4  Marsh to enter her checking account number and her bank routing number into the

5  Payday Loan Website's application screen.  Marsh entered this information into the

6  Payday Loan Website.

7       97.    On information and belief, without Marsh's knowledge or consent, the

8  Payday Loan Website transferred Marsh's personal information to the Zaazoom Entities,

9  including her checking account number and bank routing number.

10       98.    On information and belief, this transfer of Marsh's personal information

11  occurred under Defendants' supervision, control, and guidance.

12       99.    Without Marsh's knowledge or consent, the Zaazoom Entities used Marsh's

13  personal information—including her account number and bank routing number—to enroll

14  Marsh as a member of the Liberty Website and/or the U-Clip Website.

15       100.    On information and belief, this enrollment of Marsh occurred under

16  Defendants' supervision, control, and guidance.

17       101.    On or around January 16, 2011, without Marsh's knowledge or consent, the

18  Zaazoom Entities and their processors created and deposited a remotely created check

19  from Marsh's checking account, payable to Liberty Discount Club, in the amount of

20  $49.98 (the "Marsh Check").

21       102.    On information and belief, this drafting of the Marsh Check occurred under

22  Defendants' supervision, control, and guidance.

23       103.    As a result of Defendants' misconduct, money was wrongfully withdrawn

24  from Marsh's account and Marsh has been damaged.  On information and belief, some

25  or all of this money was transferred to Defendants.

26  **Plaintiff Evans**

27       104.    Plaintiff Evans has never applied to be a member of the Liberty Website,

28  the U-Clip Website, or any other one of Defendants' websites.  Evans never provided her

CASE NO.

COMPLAINT

1  checking account number or her bank routing number to either the Liberty Website or the

2  U-Clip Website or any other one of Defendants' websites.

3      105.   On or around October 25, 2010, Evans applied for a payday loan on a

4  Payday Loan Website.

5      106.   In applying for a payday loan, the Payday Loan Website presented Evans

6  with online offers for unrelated goods and services.  However, Evans specifically chose

7  not to participate in any of those offers or to make any purchases.  Given Evans's

8  financial situation, it was not possible for Evans to consider participating in such offers,

9  and she automatically rejected all such offers.

10     107.   In order to apply for a payday loan, the Payday Loan Website required

11 Evans to enter her checking account number and her bank routing number into the

12 Payday Loan Website's application screen.  Evans entered this information into the

13 Payday Loan Website.

14     108.   On information and belief, without Evans's knowledge or consent, the

15 Payday Loan Website transferred Marsh's personal information to the Zaazoom Entities,

16 including her checking account number and bank routing number.

17     109.   On information and belief, this transfer of Evans's personal information

18 occurred under Defendants' supervision, control, and guidance.

19     110.   Without Evans's knowledge or consent, the Zaazoom Entities used Evans's

20 personal information—including her account number and bank routing number—to enroll

21 Evans as a member of the Liberty Website and/or the U-Clip Website.

22     111.   On information and belief, this enrollment of Evans occurred under

23 Defendants' supervision, control, and guidance.

24     112.   On or around October 25, 2010, without Evans's knowledge or consent, the

25 Zaazoom Entities and their processors created and deposited a remotely created check

26 from Evans's checking account, payable to Liberty Discount Club, in the amount of

27 $49.98 (the "Evans 10/25 Check").

28

CASE NO.

**COMPLAINT**

1    113.   On or around October 28, 2010, without Evans's knowledge or consent, the

2  Zaazoom Entities and their processors created and deposited a remotely created check

3  from Evans's checking account, payable to Discount Web Member Site, in the amount of

4  $22.99 (the "Evans 10/28 Check").

5    114.   On or around November 1, 2010, without Evans's knowledge or consent,

6  the Zaazoom Entities and their processors created and deposited a remotely created

7  check from Evans's checking account, payable to UClip Coupon, in the amount of $12.99

8  (the "Evans 11/01 Check").

9    115.   On or around December 3, 2010, without Evans's knowledge or consent,

10  the Zaazoom Entities and their processors created and deposited a remotely created

11  check from Evans's checking account, payable to UClip Coupon, in the amount of $12.99

12  (the "Evans 12/03 Check").

13    116.   On information and belief, this drafting and depositing of the Evans Checks

14  occurred under Defendants' supervision, control, and guidance.

15    117.   As a result of Defendants' misconduct, money was wrongfully withdrawn

16  from Evans's account and Evans has been damaged.  On information and belief, some

17  or all of this money was transferred to Defendants.

18                        **CLASS ACTION ALLEGATIONS**

19    118.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action

20  on their own behalf and as representatives of all persons: a) whose checking accounts

21  were drawn on by way of remotely created checks created by the Zaazoom Entities for

22  the Liberty Website and/or U-Clip Website and/or other online coupon or discount service

23  operated by the Zaazoom Entities after May 6, 2007, and b) who never consented to the

24  creation of a remotely created check to pay for the Zaazoom Entities' services on the

25  Liberty Website and/or U-Clip Website and/or other online coupon or discount service

26  operated by the Zaazoom Entities (the "Class").

27    119.   Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action

28  on their own behalves and as representatives of all California residents: a) whose

CASE NO.                                                          **COMPLAINT**

1    checking accounts were drawn on by way of remotely created checks created by the

2    Zaazoom Entities for the Liberty Website and/or U-Clip Website and/or other online

3    coupon or discount service operated by the Zaazoom Entities after May 6, 2007, and b)

4    who never consented to the creation of a remotely created check to pay for the Zaazoom

5    Entities' services on the Liberty Website and/or U-Clip Website and/or other online

6    coupon or discount service operated by the Zaazoom Entities (the "California Subclass").

7         120.   A class action is appropriate here because there exists an ascertainable

8    Class and California Subclass, and a well-defined community of interest in the questions

9    of law and fact involved.

10        121.   The Class and California Subclass are readily ascertainable from

11   Defendants' records of members of Zaazoom Entities' Liberty Website and/or U-Clip

12   Website and/or other online coupon or discount services operated by the Zaazoom

13   Entities.

14        122.   A class action is the superior method of adjudicating this controversy

15   because: a) the Class and California Subclass are so numerous that the joinder of all

16   members is impracticable, b) there are questions of law and fact common to the Class

17   and California Subclass that predominate over any question affecting only individual

18   Class and California Subclass members, and c) the claims of the representative Plaintiffs

19   are typical of the claims of the Class and California Subclass, and the representative

20   Plaintiffs will fairly and adequately protect the interests of the Class and California

21   Subclass.

22        123.   The common questions of law and fact include:

23        •    Whether the Zaazoom Entities used information from Payday Loan

24             Websites to draft remotely created checks from Plaintiffs and the

25             other Class members;

26        •    Whether the Zaazoom Entities obtained authorization to draft

27             remotely created checks from Plaintiffs and the other Class

28             members;

CASE NO.

**COMPLAINT**

- Whether Defendants knew about and exercised control over the Zaazoom Entities when they drafted and deposited remotely created checks from Plaintiffs and the other Class members;

- Whether Defendants' conduct constitutes an unfair, unlawful, and/or fraudulent business practice under California Business and Professions Code section 17200;

- Whether Defendants' conduct constitutes an actionable consumer fraud under the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§44-1521;

- Whether Defendants converted and/or aided and abetted in the conversion of money from Plaintiffs and the other Class members; and

- Whether Defendants committed negligence by unreasonably disregarding knowledge of extremely suspicious circumstances surrounding the remotely created checks from Plaintiffs and the other Class members.

124.    Plaintiffs can and will fairly and adequately represent and protect the interests of the Class and California Subclass because:

- All of the questions of law and fact regarding the liability of Defendants are common to the Class and California Subclass and predominate over any individual issues that may exist, such that by prevailing on their own claims, Plaintiffs will necessarily establish the liability of Defendants to all Class and California Subclass members;

- Without the representation provided by Plaintiffs, it is unlikely that any Class or Subclass members would receive legal representation and/or obtain recourse for the misconduct carried out by Defendants; and

- Plaintiffs have retained competent attorneys who are experienced

both in the conduct of class actions and the law governing online advertising, e-contracting, and online payment systems.   Plaintiffs and their counsel have the necessary resources to litigate this class action, and Plaintiffs and their counsel are aware of their fiduciary responsibility to the Class and California Subclass members and are determined to discharge those duties to obtain the best possible recovery for the Class and California Subclass.

**FIRST CLAIM FOR RELIEF**

**(Violation of Unlawful Prong of California Business and Professions Code §17200—brought by Marsh and Evans individually and on behalf of the California Subclass against Defendants)**

125.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 124.

126.   Without the authorization or consent of Plaintiffs or the other California Subclass members, the Zaazoom Entities obtained the California Subclass members' personal information—including their checking account numbers and bank routing numbers—from one or more Payday Loan Websites.

127.   Without the authorization or consent of Plaintiffs or the other California Subclass members, the Zaazoom Entities registered the California Subclass members for membership with the Liberty Website, the U-Clip Website, and/or one of the other Zaazoom Websites using the personal information the Zaazoom Entities had obtained from one or more Payday Loan Websites.

128.   Without the authorization or consent of Plaintiffs or the other California Subclass members, the Zaazoom Entities engaged processors to draft remotely created checks drawn on the California Subclass members' checking accounts.

129.   Without the authorization or consent of Plaintiffs or the other California Subclass members, money was transferred from the California Subclass members' checking accounts to the Zaazoom Entities and ultimately to Defendants

//

CASE NO.

19

**COMPLAINT**

1    130.   On information and belief, Defendants knew about and exerted control over

2    the Zaazoom Entities, in their enrollment of Plaintiffs and the other California Subclass

3    members in the Zaazoom Websites without the members' knowledge or consent.

4    131.   On information and belief, Defendants knew about and exerted control over

5    the Zaazoom Entities in their drafting and depositing of remotely created checks from

6    Plaintiffs and the other California Subclass members without the members' knowledge or

7    consent.

8    132.   Defendants have engaged in an unlawful business act or practice in

9    violation of California Business and Professions Code section 17200.

10   133.   In violation of California Penal Code section 470, the Zaazoom Entities,

11   under the supervision, control, and guidance of Defendants, signed the name of Plaintiffs

12   and the other California Subclass members to remotely created checks while knowing

13   that they had no authority to do so.

14   134.   In violation of California Penal Code section 484, the Zaazoom Entities,

15   under the supervision, control, and guidance of Defendants, stole, took, and/or carried

16   the money of Plaintiffs and the other California Subclass members and/or defrauded the

17   California Subclass members of their money.

18   135.   In violation of 15 U.S.C. §8402, the Zaazoom Entities, under the

19   supervision, control, and guidance of Defendants, charged the financial accounts of

20   Plaintiffs and the other California Subclass members without clearly and conspicuously

21   disclosing the material terms of their online coupon service before obtaining the

22   California Subclass members' billing information.

23   136.   In violation of 15 U.S.C. §8402, the Zaazoom Entities, under the

24   supervision, control, and guidance of Defendants, charged the financial accounts of

25   Plaintiffs and the other California Subclass members without obtaining the express,

26   informed consent of the California Subclass members to charge their accounts for the

27   Zaazoom Defendants' online coupon service by obtaining the Class members' full

28   account information, name, address and requiring an additional affirmative action.

137. In violation of California Business and Professions Code section 17602(a)(1), the Zaazoom Entities, under the supervision, control, and guidance of Defendants, failed to present the terms of their online coupon service in a clear and conspicuous manner before the subscription was fulfilled in visual proximity to the request for consent to the offer.

138. In violation of California Business and Professions Code section 17602(a)(1), the Zaazoom Entities, under the supervision, control, and guidance of Defendants, charged Plaintiffs and the other California Subclass members for their online coupon service without first obtaining California Subclass members' affirmative consent to the agreement containing the offer terms.

139. On information and belief, Defendants oversaw, controlled, and monitored the Zaazoom Entities' conduct described in this claim.

140. As a result of the Defendants' misconduct, Plaintiffs and the other California Subclass members have suffered an injury in fact and have lost money or property as a result of the unfair competition. On information and belief, some or all of this money was transferred to Defendants.

**SECOND CLAIM FOR RELIEF**

**(Violation of Fraudulent Prong of California Business and Professions Code §17200—brought by Marsh and Evans individually and on behalf of the California Subclass against Defendants)**

141. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 140.

142. Without the authorization or consent of Plaintiffs or the other California Subclass members, the Zaazoom Entities obtained the California Subclass members' personal information—including their checking account numbers and bank routing numbers—from one or more Payday Loan Websites.

143. Without the authorization or consent of Plaintiffs or the other California Subclass members, the Zaazoom Entities registered the California Subclass members for membership with the Liberty Website, the U-Clip Website, and/or one of the other

1  Zaazoom Websites using the personal information the Zaazoom Entities had obtained
2  from one or more Payday Loan Websites.

3  144.  Without the authorization or consent of Plaintiffs or the other California
4  Subclass members, the Zaazoom Entities engaged processors to draft remotely created
5  checks drawn on the California Subclass members' checking accounts.

6  145.  Without the authorization or consent of Plaintiffs or the other California
7  Subclass members, money was transferred from the California Subclass members'
8  checking accounts to the Zaazoom Entities and ultimately to Defendants

9  146.  On information and belief, Defendants knew about and exerted control over
10  the Zaazoom Entities in their enrollment of Plaintiffs and the other California Subclass
11  members in the Zaazoom Websites without the members' knowledge or consent.

12  147.  On information and belief, Defendants knew about and exerted control over
13  the Zaazoom Entities in their drafting and depositing of remotely created checks from
14  Plaintiffs and the other California Subclass members without the members' knowledge or
15  consent.

16  148.  The Zaazoom Entities never disclosed to Plaintiffs or the other California
17  Subclass members the existence of the Zaazoom Entities' online coupon program.

18  149.  The Zaazoom Entities never disclosed to Plaintiffs or the other California
19  Subclass members the terms of the Zaazoom Entities' online coupon program.

20  150.  The Zaazoom Entities never disclosed to Plaintiffs or the other California
21  Subclass members that they would be enrolled in the Zaazoom Entities' online coupon
22  program.

23  151.  The Zaazoom Entities' never disclosed to Plaintiffs or the other California
24  Subclass members that they would be charged for the Zaazoom Entities' online coupon
25  program in the form of remotely created checks drawn on the California Subclass
26  members' accounts.

27  152.  The Zaazoom Entities' failures to disclose this information to Plaintiffs and
28  the other California Subclass members were material omissions.

1    153.   A reasonable member of the public would have had an expectation that the

2  Zaazoom Entities would have disclosed the existence and terms of their online coupon

3  program.

4    154.   A reasonable member of the public would have had an expectation that the

5  Zaazoom Entities would have disclosed that the Zaazoom Entities had enrolled and

6  charged that person for the Zaazoom Entities' online coupon program.

7    155.   A reasonable consumer would have been deceived by the Defendants'

8  omissions.

9    156.   On information and belief, Defendants oversaw, controlled, and monitored

10  the Zaazoom Entities' conduct described in this claim.

11    157.   On information and belief, Defendants knew that the Zaazoom Entities had

12  not made the above-referenced disclosures to Plaintiffs or the other California Subclass

13  members.

14    158.   On information and belief, Defendants had the authority and capability to

15  make the above-referenced disclosures to Plaintiffs and the other California Subclass

16  members but chose not do so.

17    159.   As a result of the Defendants' misconduct, Plaintiffs and the other California

18  Subclass members have suffered an injury in fact and have lost money or property as a

19  result of the unfair competition.  On information and belief, some or all of this money was

20  transferred to Defendants.

21                        **THIRD CLAIM FOR RELIEF**

22  **(Violation of Unfair Prong of California Business and Professions Code §17200—
   brought by Marsh and Evans individually and on behalf of the California Subclass**

23  **against the Defendants)**

24    160.   Plaintiffs incorporate by reference the allegations contained in Paragraphs

25  1 through 159.

26    161.   Without the authorization or consent of Plaintiffs or the other California

27  Subclass members, the Zaazoom Entities obtained the California Subclass members'

28

CASE NO.
                                          23
                                                                    **COMPLAINT**

1   personal information—including their checking account numbers and bank routing

2   numbers—from one or more Payday Loan Websites.

3       162.   Without the authorization or consent of Plaintiffs or the other California

4   Subclass members, the Zaazoom Entities registered the California Subclass members

5   for membership with the Liberty Website, the U-Clip Website, and/or one of the other

6   Zaazoom Websites using the personal information the Zaazoom Entities had obtained

7   from one or more Payday Loan Websites.

8       163.   Without the authorization or consent of Plaintiffs or the other California

9   Subclass members, the Zaazoom Entities engaged processors to draft remotely created

10  checks drawn on the California Subclass members' checking accounts.

11      164.   Without the authorization or consent of Plaintiffs or the other California

12  Subclass members, money was transferred from the California Subclass members'

13  checking accounts to the Zaazoom Entities and ultimately to Defendants

14      165.   On information and belief, Defendants knew about and exerted control over

15  the Zaazoom Entities in their enrollment of Plaintiffs and the other California Subclass

16  members in the Zaazoom Websites without the members' knowledge or consent.

17      166.   On information and belief, Defendants knew about and exerted control over

18  the Zaazoom Entities in their drafting and depositing of remotely created checks from

19  Plaintiffs and the other California Subclass members without the members' knowledge or

20  consent.

21      167.   On information and belief, Defendants oversaw, controlled, and monitored

22  the Zaazoom Entities' conduct described in this claim.

23      168.   Defendants' conduct constitutes an unfair business practice under section

24  17200 because it offends an established public policy and is immoral, unethical,

25  oppressive, unscrupulous, or substantially injurious to consumers.

26      169.   As a result of the Defendants' misconduct, Plaintiffs and the other California

27  Subclass members have suffered an injury in fact and have lost money or property as a

28

1    result of the unfair competition.  On information and belief, some or all of this money was

2    transferred to Defendants.

3                                    **FOURTH CLAIM FOR RELIEF**

4    **(Violation of Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§44-1521 *et. seq.*—**
     **brought by Marsh and Evans individually and on behalf of the Class**
5                                    **against Defendants)**

6            170.   Plaintiffs incorporate by reference the allegations contained in Paragraphs

7    1 through 169.

8            171.   Without the authorization or consent of Plaintiffs or the other Class

9    members, the Zaazoom Entities obtained the Class members' personal information—

10   including their checking account numbers and bank routing numbers—from one or more

11   Payday Loan Websites.

12           172.   Without the authorization or consent of Plaintiffs or the other Class

13   members, the Zaazoom Entities registered the Class members for membership with the

14   Liberty Website, the U-Clip Website, and/or one of the other Zaazoom Websites using

15   the personal information the Zaazoom Entities had obtained from one or more Payday

16   Loan Websites.

17           173.   Without the authorization or consent of Plaintiffs or the other Class

18   members, the Zaazoom Entities engaged processors to draft remotely created checks

19   drawn on the Class members' checking accounts.

20           174.   Without the authorization or consent of Plaintiffs or the other Class

21   members, money was transferred from the Class members' checking accounts to the

22   Zaazoom Entities and ultimately to Defendants.

23           175.   On information and belief, Defendants knew about and exerted control over

24   the Zaazoom Entities in their enrollment of Plaintiffs and the other Class members in the

25   Zaazoom Websites without the members' knowledge or consent.

26           176.   On information and belief, Defendants knew about and exerted control over

27   the Zaazoom Entities in their drafting and depositing of remotely created checks from

28   Plaintiffs and the other Class members without the members' knowledge or consent.

CASE NO.                                          25                                      **COMPLAINT**

1   177.   The Zaazoom Entities never disclosed to Plaintiffs or the other Class

2   members the existence of the Zaazoom Entities' online coupon program.

3   178.   The Zaazoom Entities never disclosed to Plaintiffs or the other Class

4   members the terms of the Zaazoom Entities' online coupon program.

5   179.   The Zaazoom Entities never disclosed to Plaintiffs or the other Class

6   members that they would be enrolled in the Zaazoom Entities' online coupon program.

7   180.   The Zaazoom Entities' never disclosed to Plaintiffs or the other Class

8   members that they would be charged for the Zaazoom Entities' online coupon program in

9   the form of remotely created checks drawn on the Class members' accounts.

10   181.   The Zaazoom Entities' failures to disclose this information to Plaintiffs and

11   the other Class members were material omissions.

12   182.   On information and belief, Defendants oversaw, controlled, and monitored

13   the Zaazoom Entities' conduct described in this claim.

14   183.   On information and belief, Defendants knew that the Zaazoom Entities had

15   not made the above-referenced disclosures to Plaintiffs or the other Class members.

16   184.   On information and belief, Defendants had the authority and capability to

17   make the above-referenced disclosures to Plaintiffs and the other Class members but

18   chose not do so.

19   185.   In engaging in the above-described misconduct, Defendants used

20   deception, deceptive acts and practices, fraud, false pretenses, false promises,

21   misrepresentations, concealment, and the suppression or omission of material facts with

22   intent that others rely upon such concealment, in connection with the sale or

23   advertisement of objects, wares, goods, intangibles, and services in violation of Arizona

24   Revised Statutes section 44-1521.

25   186.   Defendants' misconduct was wanton, reckless, showed spite and ill will,

26   and demonstrated a reckless indifference to the interests of others.

27   187.   As a result of Defendants' misconduct, Plaintiffs and the other Class

28   members were damaged.

**FIFTH CLAIM FOR RELIEF**

**(Conversion & Aiding and Abetting Conversion—brought by Marsh and Evans individually and on behalf of the Class against Defendants)**

188.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 187.

189.   Without the authorization or consent of Plaintiffs or the other Class members, the Zaazoom Entities obtained the Class members' personal information— including their checking account numbers and bank routing numbers—from one or more Payday Loan Websites.

190.   Without the authorization or consent of Plaintiffs or the other Class members, the Zaazoom Entities registered the Class members for membership with the Liberty Website, the U-Clip Website, and/or one of the other Zaazoom Websites using the personal information the Zaazoom Entities had obtained from one or more Payday Loan Websites.

191.   Without the authorization or consent of Plaintiffs or the other Class members, the Zaazoom Entities engaged processors to draft remotely created checks drawn on the Class members' checking accounts.

192.   Without the authorization or consent of Plaintiffs or the other Class members, money was transferred from the Class members' checking accounts to the Zaazoom Entities.  On information and belief, some or all of this money was transferred to Defendants.

193.   Plaintiffs and the other Class members owned the money in their bank accounts that was wrongfully transferred to the Zaazoom Entities and to Defendants.

194.   The Zaazoom Entities transferred Plaintiffs' and the other Class members' money without legal justification, and in a manner that was inconsistent with and violated the Class members' rights to their money.

195.   The money wrongfully transferred by the Zaazoom Entities is a specific, identifiable sum.

196.    Defendants substantially assisted the Zaazoom Entities in transferring the money of Plaintiffs and the other Class members.

197.    On information and belief, Defendants oversaw, controlled, and monitored the Zaazoom Entities' conduct described in this claim.

198.    Defendants knew that the Zaazoom Entities did not have any right to the money taken from Plaintiffs and the other Class members.

199.    As a result of Defendants' misconduct, Plaintiffs and the other Class members were damaged.

## SIXTH CLAIM FOR RELIEF

**(Negligence—brought by Marsh and Evans individually and on behalf of the Class against Defendants)**

200.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 199.

201.    Defendants owed a duty of care to Plaintiffs and the other Class members as officers, owners, and principals of the Zaazoom Entities, which had a supposed merchant-consumer relationship with the Class members.

202.    Without the authorization or consent of Plaintiffs or the other Class members, the Zaazoom Entities obtained the Class members' personal information—including their checking account numbers and bank routing numbers—from one or more Payday Loan Websites.

203.    Without the authorization or consent of Plaintiffs or the other Class members, the Zaazoom Entities registered the Class members for membership with the Liberty Website, the U-Clip Website, and/or one of the other Zaazoom Websites using the personal information the Zaazoom Entities had obtained from one or more Payday Loan Websites.

204.    Without the authorization or consent of Plaintiffs or the other Class members, the Zaazoom Entities engaged processors to draft remotely created checks drawn on the Class members' checking accounts.

1    205.   Without the authorization or consent of Plaintiffs or the other Class
2    members, money was transferred from the Class members' checking accounts to the
3    Zaazoom Entities and ultimately to Defendants.

4    206.   In the alternative to the Claims 1-6, Plaintiffs allege that Defendants did not
5    have specific knowledge that Plaintiffs and the other Class members had not enrolled in
6    a Zaazoom Website.

7    207.   In the alternative to the Claims 1-6, Plaintiffs allege that Defendants did not
8    have specific knowledge that Plaintiffs and the other Class members had not agreed to
9    pay for memberships in a Zaazoom Website.

10   208.   Defendants were aware of extremely suspicious circumstances regarding
11   the Zaazoom Entities, the Zaazoom Websites, and the remotely created checks
12   supposedly authorized by Plaintiffs and the other Class members.

13   209.   Among these suspicious circumstances were: a) a tremendous number of
14   customer complaints by consumers regarding the remotely created checks, where such
15   consumers had complained that the checks were forgeries; b) an excessively high check
16   return rate, which was more than 100 times any acceptable return rate; c) inquiries by
17   banks, government agencies, and consumer watchdogs about the legitimacy of the
18   Zaazoom Entities' business practices and the validity of the remotely created checks
19   payable to the Zaazoom Entities; and d) the fact that the Zaazoom Entities' processors
20   were filtering out 20% of the Zaazoom Entities' checks as invalid even before the
21   Zaazoom Entities experienced a nearly 60% check return rate, resulting in an effective
22   check return rate of about 80%.

23   210.   Defendants were aware of all of these circumstances and additional
24   suspicious circumstances regarding the Zaazoom Entities' business practices.

25   211.   These circumstances would have put any reasonable person on notice that
26   the remotely created checks payable to the Zaazoom Entities and ostensibly authorized
27   by Plaintiffs and the other Class members were forgeries.

28   212.   Despite    Defendants'    knowledge    of    these    extremely    suspicious

CASE NO.
                                    29                                    COMPLAINT

1    circumstances, Defendants continued to control, monitor, and oversee the Zaazoom

2    Entities so that the Zaazoom Entities enrolled Plaintiffs and the other Class members in

3    the Zaazoom Websites and drafted remotely created checks from the Class members'

4    accounts.

5        213.   Defendants breached the duty of care they owed to Plaintiffs and the other

6    Class members.

7        214.   It was foreseeable that Plaintiffs and the other Class members would be

8    harmed by Defendants' breaches of their duty of care.

9        215.   As a direct result of Defendants' breach of their duty, Plaintiffs and the other

10   Class members were harmed.

11

12                              **PRAYER FOR RELIEF**

13   **WHEREFORE**, Plaintiffs respectfully request judgment as follows:

14       1.     That the Court enter a judgment finding that Defendants have:

15              a.    violated California Business and Professions Code §17200;

16              b.    violated Arizona Revised Statutes §44-1521;

17              c.    committed conversion;

18              d.    committed negligence.

19       2.     That the Court enter a preliminary and permanent injunction restraining

20   Defendants from drafting or depositing remotely created checks without the payor's

21   authorization and consent.

22       3.     That the Court award damages and monetary relief as follows:

23              a.    Damages in an amount to be determined at trial in the form of the

24                    Class members' actual damages;

25              b.    Damages in an amount to be determined at trial in the form of

26                    restitution of the money wrongfully withdrawn from the California

27                    Subclass members' checking accounts pursuant to Cal. Bus. & Prof.

28                    C. §17200 and Arizona Revised Statutes §44-1521;

CASE NO.                                                          **COMPLAINT**

1          c.     Punitive damages of $10,000 per violation or other appropriate

2                   punitive damages under Arizona Revised Statutes §44-1531;

3          d.     Punitive damages under California and Arizona law;

4          e.     Plaintiffs' and the other Class members' attorneys' fees under

5                   Arizona Revised Statutes §44-1534; and

6          f.     Plaintiffs' and the other Class members' costs.

7     4.     Such other relief that the Court determines is just and proper.

8

9  Respectfully submitted,

10  DATED:  April 27, 2012             **KRONENBERGER ROSENFELD, LLP**

11

12                         By: _Karl S. Kronenberger_

13                            Karl S. Kronenberger

14                       Attorneys for Plaintiffs

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2                        **REQUEST FOR JURY TRIAL**

3    Plaintiffs hereby demand a trial of this action by jury.

4

5    DATED:  April 27, 2012                    **KRONENBERGER ROSENFELD, LLP**

6

7                                              By: _Karl S. Kronenberg_

8                                                  Karl S. Kronenberger

9                                              Attorneys for Plaintiffs

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO.                             32                              **COMPLAINT**